**UNITED STATES of America, Plaintiff–Appellee,**

v.

**William G. LINDSEY, Jr., Defendant–Appellant.**

**No. 93–3963.**

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1994.

Decided July 19, 1994.

---

Helene B. Greenwald, Asst. U.S. Atty., Brian W. Blanchard (argued), Barry R. Elden, Asst. U.S. Atty., James B. Burns, Office of the U.S. Atty., Chicago, IL, for plaintiff-appellee.

Carol A. Brook, Camille B. Conway, Nancy B. Murnighan (argued), Office of the Federal Defender Program, Chicago, IL, for defendant-appellant.

Before ALARCON,* RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

William Lindsey pleaded guilty to being a felon in possession of two firearms in violation of 18 U.S.C. § 922(g)(1). On appeal, he contends that the district court erred in enhancing his sentence for possession of a third firearm. We do not agree and, for the reasons that follow, affirm the judgment of the district court.

## I

Mr. Lindsey was originally charged with unlawfully possessing three firearms in violation of 18 U.S.C. § 922(g)(1). The government later requested that the district court dismiss without prejudice the charge concerning Mr. Lindsey's possession of one of those guns, a .38–caliber revolver. But the government made clear that it planned to argue that Mr. Lindsey's sentence should be based on possession of the .38–caliber revolver as well as on possession of the other two firearms. Mr. Lindsey eventually pleaded guilty to being a felon in possession of two firearms. However, when he discovered that the presentence investigation report recommended that his sentencing guideline calculation be based on possession of three firearms, he filed a written objection with the district court. He contended that sufficient evidence did not support a finding that he had possessed a third firearm, and that a one-level increase of the offense level pursuant to U.S.S.G. § 2K2.1(b)(1)(A) was therefore unwarranted.[1]

At Mr. Lindsey's sentencing hearing, the government presented the testimony of ATF Special Agent Raynard Jones in support of its contention that Mr. Lindsey be sentenced on the basis of unlawful possession of three firearms. Agent Jones testified that, in March 1992, he seized two firearms from the residence of Jamie Mack. He also seized a photograph from her residence that shows Mr. Lindsey in possession of four firearms. Agent Jones testified that Mack told him that she had taken the photograph herself a month before when she and Mr. Lindsey were on a trip to Mississippi. Mack also told Agent Jones that one of the guns Mr. Lindsey is shown holding in the photograph is a .38–caliber revolver that Mr. Lindsey had purchased in Mississippi for an individual named "Bob."

Agent Jones further testified that, in a May 1992 arrest of Bobby Borders, he recovered a .38–caliber revolver and another gun from Borders' residence. Agent Jones stated that Borders told him that Mr. Lindsey had given him the .38–caliber revolver in February 1992. Borders informed Agent Jones that Mr. Lindsey had brought the revolver to Illinois from Mississippi. Borders also agreed to place telephone calls to

---

* The Honorable Arthur L. Alarcon, of the United States Court of Appeals for the Ninth Circuit, is sitting by designation.

1. U.S.S.G. § 2K2.1(b)(1)(A) provides for a one-level increase in the offense level for unlawful-possession offenses involving three or four firearms.

Mr. Lindsey in an attempt to get Mr. Lindsey to discuss the .38–caliber revolver. Although Mr. Lindsey referred to one of the guns for which he pleaded guilty, he did not expressly refer to the .38–caliber revolver; Borders, however, told Agent Jones that his reference to "Baby" was a reference to the .38–caliber revolver.

The government also presented the testimony of ATF Special Agent Mark Bartholomew, a firearms expert. He stated that he had closely examined the government's blow-up of the photograph seized from Jamie Mack's residence showing Mr. Lindsey in possession of four firearms. Agent Bartholomew testified that he was "60/40 or 70/30" percent certain that a handgun shown in Mr. Lindsey's right front pocket was a .38–caliber revolver.

Mr. Lindsey presented no witnesses at the sentencing hearing. He did present, however, the transcript of Bobby Borders' plea proceeding before the United States District Court for the Western District of Wisconsin. At that proceeding, Bobby Borders' attorney represented to the court that both of the guns seized during his arrest, including the .38–caliber revolver, had belonged to Borders' mother and had been passed on to him when she died in 1988.

Based on this evidence, the district court concluded that the government had demonstrated by a preponderance of the evidence that Mr. Lindsey had unlawfully possessed the .38–caliber revolver. The district court therefore found that Mr. Lindsey had unlawfully possessed three firearms, and that a one-level increase in his offense level was warranted pursuant to U.S.S.G. § 2K2.1(b)(1)(A). Mr. Lindsey's resulting offense level was 22 with a criminal history category of IV, yielding a guideline range of 63–78 months. The district court sentenced Mr. Lindsey to 78 months' imprisonment.

## II

■ On appeal, Mr. Lindsey submits that the district court erred in increasing his offense level by one level for possession of a third firearm, the .38–caliber revolver. Because the district court's decision was based on a factual finding, we shall review its decision for clear error. *United States v. Sykes,* 7 F.3d 1331, 1335 (7th Cir.1993). We thus shall reverse the district court's factual finding only if we are left with the definite and

firm conviction that a mistake has been committed. *Id.* We also note that, because the district court's determination concerns the resolution of a factual dispute at sentencing, the district court had to find that Mr. Lindsey possessed the third weapon only by a preponderance of the evidence. *United States v. Haddad,* 10 F.3d 1252, 1263 (7th Cir.1993).

■ Mr. Lindsey argues that the evidence relied upon by the district court to enhance his sentence under U.S.S.G. § 2K2.1(b)(1)(A) failed to meet minimum standards of reliability. Although he acknowledges that a district court may consider hearsay evidence in making sentencing determinations, he contends that the "inherent unreliability" of accomplice testimony precluded the district court from relying on the statements of Mack and Borders in enhancing his sentence. *See United States v. McCabe,* 720 F.2d 951, 955 (7th Cir.1983) (discussing the "inherent unreliability" of accomplice testimony). Mr. Lindsey submits that, under this circuit's sentencing guidelines caselaw, those statements simply lacked "sufficient indicia of reliability to support [their] probable accuracy." *Haddad,* 10 F.3d at 1263.

Mr. Lindsey asserts that this inherent unreliability is evidenced by the fact that each accomplice subsequently received favorable treatment by the authorities (e.g., Mack was not charged with illegal possession of a firearm), and by the fact that Borders' attorney later contradicted Borders' statement that he had received the gun from Mr. Lindsey. Moreover, Mr. Lindsey argues that Agent Bartholomew's testimony fails to corroborate the accomplices' statements because his estimations that the gun in the photograph exhibit was a .38–caliber revolver constituted nothing more than "sheer guesswork." Because, according to Mr. Lindsey, none of the government's evidence standing alone would have been sufficient to support the district court's enhancement, "the sum of these three shreds of inherently unreliable and speculative evidence cannot be greater than any of its parts."

We cannot accept Mr. Lindsey's contentions. First, with respect to Mr. Lindsey's argument concerning accomplice testimony, we have made clear on several occasions that at sentencing the "testimony of one witness, even one arguably biased against the defendant, is sufficient to support a finding of

 

fact." *United States v. Cedano–Rojas*, 999 F.2d 1175, 1180 (7th Cir.1993); *see also United States v. Mumford*, 25 F.3d 461, 467–68 (7th Cir.1994); *United States v. Rivera*, 6 F.3d 431, 445 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1098, 127 L.Ed.2d 411 (1994). Second, although we have cautioned that the sentencing judge must consider whether such testimony "has sufficient indicia of reliability to support its probable accuracy," *Haddad*, 10 F.3d at 1263; *Cedano–Rojas*, 999 F.2d at 1180; *United States v. Miele*, 989 F.2d 659, 663 (3d Cir.1993) (quoting U.S.S.G. § 6A1.3(a)), the statements at issue in this case had such sufficient indicia. Jamie Mack's statement concerning Mr. Lindsey's plans in February 1992 to give a .38–caliber to a man named "Bob" was corroborated by Bobby Borders' statement that he had in fact received the .38–caliber revolver found in his residence from Mr. Lindsey in February 1992. The photograph showing Mr. Lindsey in possession of what, according to Agent Bartholomew's testimony, was more likely than not a .38–caliber revolver rendered these mutually-corroborating statements even more reliable. In contrast, the only evidence offered to controvert the government's evidence was the uncorroborated representation of Bobby Borders' attorney made at Borders' plea proceeding. We cannot say that the district court clearly erred by finding that the government proved by a preponderance of the evidence that Mr. Lindsey had unlawfully possessed the .38–caliber revolver.[2]

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

---

2. Mr. Lindsey's heavy reliance in his Reply Brief on our recent decision in *United States v. Beler*, 20 F.3d 1428 (7th Cir.1994), does not alter our conclusion. In that case, we expressed concern over the government's ability under the guidelines to indict for less serious offenses and then expand them in the probation office following conviction. *Id.* 1431–32. We therefore emphasized, just as we had in previous cases, "that the

government must prove a defendant's additional conduct by *reliable evidence.*" *Id.* at 1432; *see also United States v. Atkinson*, 15 F.3d 715, 720 (7th Cir.1994) (stating that "our cases require that a defendant be sentenced on the basis of accurate sentencing information"). As we have demonstrated above, the evidence relied upon by the district court in this case was reliable.