61 F.3d 906
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
Loretta PATTERSON, Defendant-Appellant.
 No. 94-1443.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 6, 1995.
Decided July 7, 1995.
 
 Before FLAUM, RIPPLE and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Loretta Patterson pleaded guilty to one count of perjury before a grand jury in violation of 18 U.S.C. Sec. 1623. The district court sentenced Patterson to an eight month term of imprisonment to be followed by a three-year term of supervised release. Patterson's counsel filed a timely notice of appeal. On appeal, Patterson's counsel also filed a motion to withdraw and an Anders brief in which he stated his belief that an appeal would be frivolous. Anders v. California, 386 U.S. 738 (1967); United States v. Edwards, 777 F.2d 364 (7th Cir.1985). Pursuant to Circuit Rule 51(a), Patterson was informed of her right to respond; she did not. We will grant the motion to withdraw only if we are convinced that the possible issues for appeal are "groundless in light of legal principles and decisions." United States v. Eggen, 984 F.2d 848, 850 (7th Cir.1993) (citing McCoy v. Court of Appeals, 486 U.S. 429, 436 (1988)). Our independent review of the record reveals that there are no issues for appeal that can be considered non-frivolous.
 
 I. Issues Concerning the Plea Agreement
 
 2
 Having independently reviewed the transcript of the plea hearing, we conclude that any challenge to the voluntariness of the guilty plea would be groundless and therefore frivolous.
 
 
 3
 Patterson's guilty plea satisfies the requirements of Fed.R.Crim.P. 11. A plea hearing was held on December 22, 1993. The district court first warned Patterson that if she gave any false answers at the guilty plea hearing, they could later be used against her in another prosecution for perjury. Transcript of Plea Hearing, Dec. 22, 1993, at 3. The district court then established that Patterson was competent. Id. at 3-5. The district court asked Patterson if she had read, understood, and signed the plea agreement. Patterson said that she had. Id. at 6. The district court next ensured that Patterson's plea was voluntary and that her entry of the plea was not the result of force or promises outside of the plea agreement. Id. at 6-7. Patterson stated that she understood the nature of the charge to which she was pleading guilty (perjury before a grand jury), and that the maximum possible sentence was five years in prison, a $250,000 fine, a $50 special criminal assessment, and a three-year term of supervised release. Id. at 7-8. The district court told Patterson that in the event the district court did not accept the government's sentencing recommendations, she would still be bound by her plea agreement. Id. at 11. The district court then informed Patterson that it must follow the sentencing guidelines in sentencing her and that under some circumstances, it could impose a sentence which might be greater or less than that called for in the guidelines. Id. at 11-12. Patterson was told that under the guidelines there was no parole and, for the most part, she would serve the entire sentence. Id. at 13. Patterson was then instructed that even if the sentence received was more severe than expected, she would not be able to withdraw her guilty plea. Id. at 13. Patterson was informed that she had a right to plead not guilty, that she had a right to a trial by jury, that she had a right to assistance of counsel, that she had a right to bring in witnesses to testify on her own behalf and a right to cross-examine witnesses presented by the government, and that she had a right against self-incrimination. Id. at 14. Patterson was then told that if she pleaded guilty that she was giving up these rights. Id. at 14.
 
 
 4
 The government then recited the factual basis for the plea.[1] Id. at 14-19. However, because Patterson appeared confused about the factual basis, the plea hearing was continued the next day, December 23, 1993. At the second hearing, the district court reiterated most of its previous colloquy with Patterson.[2] The district court then asked Patterson why she had not accepted the factual basis recited at the earlier hearing. Patterson informed the court that her confusion regarding the factual basis for the plea set forth at the previous hearing was the result of her disagreement regarding the amount of money she received and not whether she had lied before the grand jury. Id. at 8. The district court then ensured that Patterson had read the indictment and understood the nature of the crime to which she was pleading guilty. Id. at 8-9. The district court went over the factual basis for the plea with Patterson and, other than the amount of money received (she believed it was $20,150 and not $21,150), Patterson agreed to it. Id. at 9-16. The district court accepted the plea.
 
 
 5
 Patterson might argue that since the district court failed to ask her at the December 23, 1993 plea hearing whether her plea was the result of coercion or promises outside of the plea agreement, it did not comply with Fed.R.Crim.P. 11(d). Rule 11(d) requires the district court to ask the defendant whether the plea was the result of coercion or any outside agreement to ensure that the plea was entered voluntarily. Here, there was no Rule 11(d) inquiry at the second plea hearing (when Patterson's plea was accepted). "As a rule, noncompliance with Rule 11 constitutes reversible error in this circuit." United States v. Bennett, 990 F.2d 998, 1004 (7th Cir.1993) (quoting United States v. Peden, 872 F.2d 1303, 1306 (7th Cir.1989)). However, Rule 11 provides a harmless error exception: "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 11(h). Although the district court did not conduct a Rule 11(d) inquiry at the hearing wherein Patterson's plea was accepted, such an inquiry was made at the plea hearing conducted the day before. Of course, the fact that Patterson did not accept the factual basis at the first hearing and did at the second might necessitate a second Rule 11(d) inquiry. However, considering the reason for Patterson's initial failure to accept the factual basis--she disagreed with an immaterial part of it--, as well as the fact that the second hearing was only one day after the first, the initial Rule 11(d) inquiry was sufficient to establish that Patterson's plea was voluntary. Any error, therefore, was harmless.
 
 
 6
 Patterson might also argue that the district court's failure to provide a Rule 11(e)(2) warning at the December 23, 1993 plea hearing invalidates her guilty plea. Rule 11(e)(2) reads, in pertinent part, that "[i]f the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request [for a particular sentence] the defendant nevertheless has no right to withdraw the plea." Fed.R.Crim.P. 11(e)(2). A plea agreement is of the type specified in subdivision (e)(1)(B) when the government agrees to "make a recommendation, or agree[s] not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding on the court." Fed.R.Crim.P. 11(e)(1)(B). Since, as part of Patterson's plea agreement, the government agreed to recommend that Patterson receive a two point reduction for acceptance of responsibility and to recommend that she be sentenced in the lower part of the guidelines range, but provided that these recommendations are not binding on the district court, the plea agreement is of the type specified under Rule 11(e)(1)(B). Hence, the admonition required by Rule 11(e)(2) is applicable to Patterson.
 
 
 7
 While the district court did give Patterson a Rule 11(e)(2) warning at the first hearing on December 22, 1993, it did not repeat this warning at the second hearing on December 23, 1993. However, even if the district court's failure to reiterate this warning at the second hearing constitutes a violation of Rule 11(e)(2), it was harmless error under Rule 11(h). Since the second hearing was only one day after the first, there is no reason to believe that Patterson forgot the district court's initial warning or suspected that it was no longer applicable. Moreover, at the second hearing, the district court reiterated that it would have to follow the sentencing guidelines and that even if the sentence received was more severe than she would expect, Patterson would still be bound by her guilty plea. Since the purpose of Rule 11(e)(2) was served--to assure "that the accused's decision to plead guilty is fully informed by disabusing the defendant of any mistaken notions he may have obtained during the plea bargaining process," United States v. Diaz-Vargas, 35 F.3d 1221, 1224 (7th Cir.1994),--any error was harmless.
 
 
 8
 Patterson might likewise object to the district court's failure to advise her that she was not eligible for parole at the December 23, 1993 plea hearing. While Rule 11 does not require that the district court disclose to the defendant that she is ineligible for parole, Key v. United States, 806 F.2d 133, 137 n. 4 (7th Cir.1986), a meaningful colloquy is advisable. Id. Here, the district court did engage in such a meaningful colloquy at the December 22, 1993 hearing. Again, while Patterson's plea was not accepted at this hearing, this hearing was only a day before the second hearing and there is no reason to suspect that Patterson either forgot the previous warning or that she believed it was no longer applicable.
 
 
 9
 Finally, Patterson might maintain that since the district court did not have the plea agreement read at the plea hearing, she was not properly notified of the plea agreement as required by Fed.R.Crim.P. 11(e)(2). Specifically, Rule 11(e)(2) provides, in pertinent part, that "[i]f a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court...." Fed.R.Crim.P. 11(e)(2). However, as mentioned above, where a failure to comply with the provisions of Rule 11 is deemed not to effect a defendant's substantial rights, it is considered harmless error and will not constitute a Rule 11 violation. Although the district court did not have the plea agreement read aloud at the plea hearing, the court sufficiently ensured that Patterson understood and agreed to all of the elements of the plea agreement. The district court made sure Patterson knew what she was pleading guilty to, id. at 7, and that in exchange, the government agreed (1) not to pursue any other possible criminal prosecutions presently known to the government and having occurred in the Western District of Wisconsin relating to the criminal conduct described in the indictment (perjury), and (2) to recommend that Patterson receive a two-level credit for acceptance of responsibility. Id. at 8-9. The district court also informed Patterson that the government reserved the right to make comments about the case to the court and the probation office, that the government would recommend sentencing at the low-level of the applicable guideline range, and that the government reserved the right to challenge the sentencing computations by the court and probation office at sentencing and on appeal. Id. at 9-10. Finally, the district court informed Patterson that the government agreed to turn its entire file over to the probation office and that all relevant conduct could be considered by the district court in determining the applicable guideline level and sentence. Id. at 10. Clearly, this colloquy ensured that Patterson was completely apprised of the terms of the plea agreement.
 
 
 10
 Hence, any claim challenging the voluntariness of the guilty plea would be groundless.
 
 II. Sentencing Issues
 
 11
 Appellate review of a sentence imposed under the guidelines is limited to cases where the sentence is (1) in violation of the law, (2) a result of the incorrect application of the guidelines, (3) greater than the sentence specified in the applicable guideline range, or (4) plainly unreasonable and imposed for an offense for which there is not guideline. 18 U.S.C. Sec. 3742(a)(1)-(4). Hence, "[a]bsent an error of law or a misapplication of the guidelines, this court lacks jurisdiction to review sentences within the appropriate guidelines range." United States v. Solis, 923 F.2d 548, 551 (7th Cir.1991). To establish whether Patterson's sentence meets any of the criteria of review, we must first decide whether she was sentenced in compliance with the United States Sentencing Guidelines.
 
 A. Application of Sentencing Guidelines
 
 12
 Our independent review reveals that the guidelines were correctly applied to Patterson's case. Patterson pleaded guilty to perjury before a grand jury in violation of 18 U.S.C. Sec. 1623. Pursuant to U.S.S.G. Sec. 2J1.3, the base offense level for this offense is 12 points. As a result of Patterson's acceptance of responsibility, she received a two point reduction pursuant to U.S.S.G. Sec. 3E1.1(a). Her total offense level was therefore 10 points. We find no possible error in these findings. The PSR calculated Patterson's total criminal history points to be 3, establishing a criminal history category of II. Based on a total offense level of 10 and a criminal history category of II, the guideline range for imprisonment was 8 to 14 months. Patterson was sentenced at the lower end of the range with a term of 8 months' imprisonment.
 
 
 13
 Counsel points out that Patterson might object to the district court's failure to depart downward under U.S.S.G. Sec. 5K2.0 in light of Patterson's unique medical and personal conditions. This claim would be groundless. It is well-settled that a determination to depart downward from the sentencing guidelines "is wholly within the discretion of the district court [and] there is no appellate remedy if a district court chooses not to depart." United States v. Gaines, 7 F.3d 101, 105 (7th Cir.1993); United States v. Franz, 886 F.2d 973, 978 (7th Cir.1989). A failure to depart from the guidelines is reviewable on appeal only where the "decision not to depart is the product of an erroneous belief that the judge lacked the authority to depart...." Gaines, 7 F.3d at 105. See also United States v. Winston, 34 F.3d 574, 581 (7th Cir.1994); United States v. Atkinson, 15 F.3d 715, 718 n. 2 (7th Cir.1994). Since the record clearly demonstrates that the district court was well aware of its authority to depart downward and exercised its discretion not to depart, we would be without jurisdiction to review the district court's refusal to depart.
 
 
 14
 Our independent review reveals that the guidelines were correctly applied in Patterson's case. Hence, her sentence does not meet any of the criteria for review, and an appeal would be groundless.
 
 B. Compliance with Rule 32
 
 15
 We must also determine whether Patterson was sentenced in compliance with Fed.R.Crim.P. 32. Rule 32(a) requires that the district court timely provide the defendant with a copy of the presentence report and afford counsel an opportunity to state objections to the report and comment on matters relating to the sentence. Patterson's counsel received the sentencing report prior to sentencing. (Sentencing Tr. at 3.) Counsel did not object to any of the factual findings contained in the report. Id. The court asked Patterson if she had any objections to the report and she answered that she did not. Id. at 3. Finally, Patterson was advised of her right to appeal her sentence. Id. at 30. Accordingly, any claim based on a violation of Rule 32 would be groundless.
 
 
 16
 Counsel's motion to withdraw is GRANTED and Patterson's appeal is DISMISSED.
 
 
 
 [1]
 The facts underlying Patterson's charge of perjury were stated as follows. While under oath before a grand jury, Patterson was asked whether several checks given to her by the Jenna Corporation constituted funds paid to her personally or whether they were given to her to deliver to the Wisconsin Winnebago Tribe. The answer was material in determining whether Jenna Corp. had been making illegal payments to the Winnebago Tribe. Patterson testified that she received the funds for herself. This testimony was knowingly false
 
 
 [2]
 The district court reminded Patterson that she was still under oath and that if she gave any false answers at the hearing, they could be used against her in another prosecution for perjury. Plea Hearing, Dec. 23, 1993, Tr. at 3. The district court asked her if she remembered what the maximum penalty for the crime to which she was pleading guilty was. Patterson said she did and recited the maximum penalties. Id. at 3. The district court asked Patterson whether she understood the provisions of the plea agreement and Patterson stated that she did. Id. at 4. The district court reiterated that it had to follow the sentencing guidelines in sentencing Patterson and all relevant conduct in applying the guidelines. Id. at 4-5. The district court also related that even if the sentence was more than expected, Patterson would have no right to withdraw the plea. Id. at 5. The district court told Patterson that if she pleaded guilty, she would be deprived of her right to a trial by jury, her right to testify on her behalf, her right against self-incrimination, and her right to cross-examine witnesses testifying against her. Id. at 6. The district court then established that Patterson was competent. Id. at 7